UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| WEI LAI DEVELOPMENT LLC, *et al.*,<br><br>*Plaintiffs*,<br><br>v.<br><br>U.S. CITIZENSHIP AND IMMIGRATION SERVICES,<br><br>*Defendant*. | Civil Action No. 21-887 (RDM) |

## MEMORANDUM OPINION

Plaintiff Wei Lai-USA, a Washington State limited liability company engaged in the construction and rental of residences, and Lin Han, a citizen and national of the People's Republic of China currently present in the state of Washington, bring this action pursuant to the Administrative Procedure Act ("APA"), 5 U.S.C. § 706, seeking review of the U.S. Citizenship and Immigration Services' ("USCIS") denial of an I-129 immigration petition and associated L-1A adjustment-of-status application that they had filed. Dkt. 1 at 2 (Compl. ¶ 1); Dkt. 1-5 at 1. Pending before the Court is USCIS's motion, pursuant to 28 U.S.C. § 1404(a), to transfer the case to "the Western District of Washington state[,] where Plaintiff [Han] resides[,] or the Central District of California because the denial happened there." Dkt. 8-1 at 2. USCIS also moves to dismiss this case under Federal Rules of Civil Procedure 12(b)(1) and (b)(3) for lack of subject-matter jurisdiction and improper venue, respectively. Dkt. 8 at 1.

For the reasons set forth below, the Court will **GRANT** USCIS's motion to transfer the case to the Central District of California.

## I. BACKGROUND

When evaluating a motion to transfer to a different venue, "a court should only consider undisputed facts supported by affidavits, depositions, stipulations, or other relevant documents." *One on One Basketball, Inc. v. Glob. Payments Direct, Inc.*, 38 F. Supp. 3d 44, 48 (D.D.C. 2014). The Court therefore draws the relevant facts from uncontested allegations in the complaint and a declaration submitted by Catherine C. Bowie, who recently "led the headquarters consolidation efforts" and "physical relocation" of USCIS, Dkt. 14-1 at 1 (Bowie Decl. ¶ 1).

"On November 4, 2019, Wei Lai-USA filed a[n] [I-129] petition for nonimmigrant worker upon behalf of Lin Han to classify her as an intracompany transferee manager with a concurrent request to change her nonimmigrant status to L-1A."[1] Dkt. 1 at 3 (Compl. ¶ 8a).[2] As Plaintiffs explain, "Ms. Han had, at the time of filing, been employed for over two years by Harbin Jin Mao Cheng Public Facility Co., Ltd. (Jin Mao-China)"—which is "an affiliate of Wei Lai-USA"—"as its Deputy General Manager." *Id.* (Compl. ¶¶ 8b–9). "The petition filed by Wei Lai-USA offered to employ Ms. Han in the United States in a position in which she would primarily manage the organization." *Id.* at 4 (Compl. ¶ 15).

On April 3, 2020, USCIS issued Plaintiffs a Request for Evidence ("RFE"), asking them to further substantiate that Han was employed in a "managerial, executive, or specialized

---

[1] "The L-1 classification may be granted to an individual who, within three years preceding the time of his or her application for admission into the United States: [h]as been employed abroad continuously for one year by a firm, corporation, or other legal entity or parent, branch, affiliate, or subsidiary; [s]eeks to enter the United States temporarily to render services to a branch of the same employer, or a parent, affiliate, or subsidiary; and [w]ill work in a capacity that is managerial or executive, or involves specialized knowledge." Dkt. 11-1 at 951.

[2] The complaint contains two paragraphs numbered "8." Dkt. 1 at 3. The Court refers to the first of these paragraphs as "8a" and to the second as "8b."

knowledge position" while at Jin Mao-China. Dkt. 11-1 at 951 (capitalization altered). As USCIS explained in the RFE:

> [Plaintiffs] submitted a letter, org[anizational] chart, description of duties, and copies of the foreign entity's payroll records to establish the beneficiary's role abroad. While you have described and illustrated the nature of [Han's] position, you did not provide sufficient evidence of her daily duties to show how she carried out the nature of these tasks. . . . Although the payroll records provide evidence of pay and employment, the records do not establish the beneficiary operated in primarily a managerial capacity on a daily basis. . . . [D]escriptions of the position abroad should be supported by sufficient corroboratory evidence of the beneficiary's role, duties, and daily responsibilities.

*Id.* at 952.

Plaintiffs responded to the RFE on August 25, 2020, submitting to USCIS roughly 160 pages of materials, including additional letters, payroll records, and documents signed by Han that purportedly verified her managerial duties at Jin Mao-China. *Id.* at 958–62. But USCIS was still unsatisfied. It issued another RFE to Plaintiffs on October 13, 2020, requesting additional evidence demonstrating that Wei Lai-USA was engaged in business in the United States in 2019 and that the proposed position for Han at Wei Lai-USA was "primarily managerial or executive." *Id.* at 1127–30. As before, USCIS explained in some detail why it required the additional evidence. *Id.* Plaintiffs responded months later, on January 22, 2021, providing USCIS nearly 300 pages of documents including, *inter alia*, Wei Lai-USA's 2019 federal tax returns, payroll summaries of Wei Lai-USA employees from September 2019 to November 2020, and certain contracts into which Wei Lai-USA had entered between 2019 and 2020. *Id.* at 1139–40. USCIS, however, remained unconvinced that Plaintiffs had met their burden, and on February 12, 2021,

3

USCIS issued a decision denying Wei Lai-USA's I-129 petition and its L-1A application on behalf of Han. Dkt. 1 at 5 (Compl. ¶ 20–21a).[3]

This suit followed. Dkt. 1. Plaintiffs' complaint, filed on April 1, 2021, alleges that USCIS's decisions denying the I-129 petition and L-1A application were arbitrary, capricious, and not in accordance with law, all in violation of the APA. *Id.* at 5–28 (Compl. Counts I–IV). In addition, Plaintiffs ask the Court to "order USCIS to re-adjudicate Wei Lai-USA's petition and application upon behalf of Ms. [Han] within thirty (30) days of its order holding the decisions denying them unlawful and setting them aside." *Id.* at 29 (Compl. Prayer for Relief). Plaintiffs have also moved for a preliminary injunction "to postpone the effectiveness of the denial of Wei Lai-USA's nonimmigrant visa petition upon Ms. Han's behalf and the corresponding denial of her application for a change of nonimmigrant [status]." Dkt. 2-1 at 2.

On April 16, 2021, USCIS responded to Plaintiffs' pending motions with a motion to transfer the case pursuant to 28 U.S.C. § 1404(a), or, in the alternative, to dismiss this case pursuant to Federal Rules of Civil Procedure 12(b)(1) and (b)(3) for lack of subject-matter jurisdiction and improper venue. Dkt. 8. Plaintiffs later filed their opposition to transfer or dismissal, Dkt. 13, after USCIS had prematurely filed a reply brief in favor of its motion, Dkt. 11. On May 10, 2021, the Court ordered USCIS promptly to file "a declaration under the penalty of perjury that explains (1) the timing of USCIS's relocation to Maryland; (2) any remaining USCIS presence in the District of Columbia; (3) any other facts relevant to the motion to transfer, including whether any aspect of Plaintiffs' petition was adjudicated or reviewed in the District of Columbia." Minute Order (May 10, 2021). The Court also invited Plaintiffs to file a

---

[3] The complaint contains two paragraphs numbered "21." Dkt. 1 at 5. The Court refers here only to the first of these paragraphs.

response to the declaration. *Id.* USCIS submitted Bowie's declaration on May 13, 2021, Dkt. 14, and Plaintiffs filed their response on May 17, 2021, Dkt. 15. USCIS then submitted additional material for the Court to consider, Dkt. 16, as did Plaintiffs in response, Dkt. 17.[4]

## II. ANALYSIS

Pursuant to 28 U.S.C. § 1404(a), the Court may transfer a case to "any other district or division where it might have been brought" for the "convenience of [the] parties and witnesses, in the interest of justice." The inquiry is two-fold. First, the Court must determine whether the case could have been brought in the transferee district. *Van Dusen v. Barrack*, 376 U.S. 612, 616 (1964). Second, the Court must decide whether the private and public interests at stake favor transfer. *Aracely v. Nielsen*, 319 F. Supp. 3d 110, 127 (D.D.C. 2018); *see also Ike v. USCIS*, No. 20-cv-1744, 2020 WL 7360214, at *2 (D.D.C. Dec. 15, 2020). This requires the Court to consider the "preferred forum of the parties," "the location where the claim arose," and "other factors of convenience," as well as "the transferee district's familiarity with the governing law," "the relative congestion of the courts," and the "local interest in deciding local controversies at home." *Aracely*, 319 F. Supp. 3d at 128–30. In making the decision to transfer, the Court must make an "individualized, case-by-case consideration of convenience and fairness." *Abusadeh v. Chertoff*, No. 06-cv-2014, 2007 WL 2111036, at *3 (D.D.C. July 23, 2007) (quoting *Barrack*, 376 U.S. at 622). As the moving party, USCIS bears the burden of justifying the proposed transfer. *Aracely*, 319 F. Supp. 3d at 127.

---

[4] The Court will also take judicial notice of the materials on USCIS's website. Fed. R. Evid. 201.

For the following reasons, the Court will transfer this action to the United States District Court for the Central District of California, where the USCIS service center that adjudicated Plaintiffs' petition and application is located.

## A.   Where the Action Could Have Been Brought

The Court starts its analysis by evaluating whether either of the proposed transferee districts were ones in which Plaintiffs' action could have been brought.  *Barrack*, 376 U.S. at 616.  The Court concludes that Plaintiffs could have filed suit in the Central District of California or the Western District of Washington.

Where an agency of the United States is the defendant, as here, venue is proper "in any judicial district in which (A) a defendant in the action resides, (B) a substantial part of the events or omissions giving rise to the claim occurred, or . . . (C) the plaintiff resides if no real property is involved in the action."  28 U.S.C. § 1391(e)(1).  Plaintiffs' immigration petition and application were both adjudicated at the California Service Center in Laguna Niguel, California.  Dkt. 14-1 at 3 (Bowie Decl. ¶ 10); *see also* Dkt. 11-1 at 1, 14.  Therefore, because "a substantial part of the events . . . giving rise to [Plaintiffs'] claim[s] occurred" in the Central District of California, venue is proper in that district.  28 U.S.C. § 1391(e)(1); *accord Pasem v. USCIS*, No. 20-cv-344, 2020 WL 2514749, at *3 (D.D.C. May 15, 2020) ("In APA cases, the underlying claim typically arises 'where the decisionmaking process occur[s].'" (alteration in original) (quoting *Gyau v. Sessions*, No. 18-cv-407, 2018 WL 4964502, at *1 (D.D.C. Oct. 15, 2018)).  Similarly, the Western District of Washington is also a proper venue because this case involves no real property and that is the "judicial district in which . . . the [P]laintiff[s] reside."  28 U.S.C.

§ 1391(e)(1); *see also* Dkt. 1 at 1 (Compl.) (listing Wei Lai-USA's residence as Renton, Washington, and Han's residence as Seattle, Washington).[5]

B.  **Private and Public Interests**

The private and public interests largely weigh in favor of transfer, except for two factors—the relative congestion of the courts and the proposed transferee district's familiarity with the governing law—which are neutral.

First, as to the preferred forum of the parties, USCIS prefers the Central District of California or the Western District of Washington, Dkt. 8-1 at 19 n.2, while Plaintiffs prefer to (and did) bring this case in the District of Columbia, Dkt. 15.  Although courts generally defer to the plaintiff's choice of forum, *Gyau*, 2018 WL 4964502, at *2, that deference is lessened when

---

[5] The Court need not decide whether the District of Columbia is also a proper venue.  That is because the Court is not dismissing the action for improper venue under 28 U.S.C. § 1406(a), but is instead transferring the action under 28 U.S.C. § 1404(a) for the convenience of and fairness to the parties.  As the Supreme Court has explained, "§ 1404(a) does not condition transfer on the initial forum's being 'wrong.' . . .  [I]t permits transfer to any district where venue is also proper (*i.e.*, 'where [the case] might have been brought') or to any other district to which the parties have agreed by contract or stipulation." *Atl. Marine Constr. Co. v. U.S. Dist. Court*, 571 U.S. 49, 59 (2013) (quoting 28 U.S.C. § 1404(a)).  Moreover, as discussed below, *see infra* n.6, the Court is not obligated to resolve motions to dismiss for improper venue before evaluating whether transferring the action under § 1404(a) is warranted.

That said, the propriety of venue in the District of Columbia is in doubt, given USCIS's limited presence in the District at the outset (and throughout the course) of this litigation.  Although USCIS's headquarters were previously located in five buildings in the District of Columbia (and one in Arlington, Virginia), "USCIS began physically relocating agency offices on August 27, 2020." Dkt. 14-1 at 2 (Bowie Decl. ¶ 4).  "The relocation entailed moving the USCIS headquarters . . . located in the six buildings . . . into the new Camp Springs, Maryland location," a move that the agency "completed on December 11, 2020." *Id.* (Bowie Decl. ¶¶ 5–6).  "There [have been] no USCIS headquarters level offices located within the District of Columbia" since December 11, 2020.  *Id.* at 3 (Bowie Decl. ¶ 8).  Three USCIS offices remain in the District of Columbia, but they "are not headquarters level programs[,] nor do they involve the type of petition at issue in the instant matter." *Id.* (Bowie Decl. ¶ 9).  Those remaining offices are the Immigrant Investor Program Office, the Refugee Affairs Division, and the Arlington Asylum Pre-Screening Center.  *Id.*

7

the plaintiff's choice is not the plaintiff's home forum, *Abusadeh*, 2007 WL 2111036, at *4, and is at its nadir when the "plaintiff's forum choice 'lacks meaningful ties to the controversy and [has] no particular interest in the parties or subject matter,'" *S. Utah Wilderness All. v. Norton*, 315 F. Supp. 2d 82, 86 (D.D.C. 2004) (alteration in original) (quoting *Islamic Republic of Iran v. Boeing Co.*, 477 F. Supp. 142, 144 (D.D.C. 1979)).

Here, Plaintiffs justify their choice of venue on three grounds: first, they contend that "venue is appropriate in the District because the USCIS performs a substantial portion of its duties here," Dkt. 13 at 9; second, they argue that "the agency's defense [on] the merits of this action relies heavily upon what appears to be a repealed regulation, 8 C.F.R. § 214.2(*l*)(1)(ii)(B) (1987)," and "[t]hus, to decide this case, th[e] Court is going to have to determine whether the regulation in question was in fact repealed, and, if so, what the significance of that repeal actually was," Dkt. 13 at 11; and finally, Plaintiffs assert that USCIS "has failed to identify any way in which it would be more convenient for any of the parties or the witnesses to transfer this case to Washington or California," *id.* at 12.

The Court is unpersuaded. Even assuming USCIS resides in the District of Columbia—a dubious proposition, as explained, *see supra* n.5—Plaintiffs' instant suit has nothing to do with directives issued by USCIS officials in D.C. Not to the contrary is Plaintiffs' argument that this case involves determining whether 8 C.F.R. § 214.2(*l*)(1)(ii)(B) (1987) was repealed and, if so, what effect that repeal had. It is true that USCIS's briefing contains quotations from the administrative record which, in turn, contain similar language to that found in 8 C.F.R. § 214.2(*l*)(1)(ii)(B) (1987). *Compare* 8 C.F.R. § 214.2(*l*)(1)(ii)(B) (1987) ("Managerial capacity . . . does not include . . . an employee who primarily performs the tasks necessary to produce the product and/or to provide the service(s) of the organization" (internal quotation marks omitted))

8

*with* Dkt. 11-1 at 4, 8 ("An employee who primarily performs the tasks necessary to produce a product or provide services is not considered to be employed in a managerial or executive capacity."). But neither the complaint, the parties' briefing, nor the administrative record identify the 1987 version of 8 C.F.R. § 214.2 as the basis for the USCIS's decision, as opposed to USCIS's *current* belief that an employee who produces products or provides services is not employed in a managerial capacity. And it is implausible, at best, that an immigration dispute that concerns the agency's compliance with its extant regulations and with the APA's requirement of reasoned decisionmaking would, instead, require resolving whether a thirty-four-year-old regulation that has been repeatedly amended or superseded since, that neither party asserts is operative, and that appears nowhere in the record, was lawfully "revoked." Simply put, Plaintiffs are not challenging the validity or existence of any USCIS rule; they are challenging the decision rendered by the California Field Office to deny their petition and application. That challenge is more appropriately brought in that jurisdiction. *See EfficientIP, Inc. v. Cuccinelli*, No. 20-cv-1455, 2020 WL 6683068, at *3–4 (D.D.C. Nov. 12, 2020) (transferring action seeking review of visa-petition denial to the district in which the USCIS center that adjudicated the petition was located, and commenting that "[w]here, as here, the only real connection the lawsuit has to the District of Columbia is that a federal agency headquartered here is charged with generally regulating and overseeing the administrative process, venue is not appropriate in the District of Columbia" (quotation marks and citation omitted)); *see also Ike*, 2020 WL 7360214, at *5 (for the same reasons, transferring visa-petition denial to district containing USCIS center where plaintiff's petition was processed).

      The remaining private and public interest factors also weigh in favor of transfer to the Central District of California. First, the "location where the claim arose" is in the Central

District of California, and "[t]here is a local interest in having localized controversies decided at home." *Onaghise v. U.S. Dep't of Homeland Sec.*, 20-cv-1048, 2020 WL 5642280, at *3 (D.D.C. Sept. 22, 2020) (alternation in original) (quoting *Adams v. Bell*, 711 F.2d 161, 167 (D.C. Cir. 1983)); *see also Bahena v. Renaud*, 20-cv-291, 2021 WL 1820232, at *4 (D.D.C. May 6, 2021). Indeed, as several decisions in this district have explained in the immigration context, "[c]ontroversies should be resolved in the locale where they arise, a policy rationale [that] applies equally to the judicial review of an administrative decision which will be limited to the administrative record." *Ngonga v. Sessions*, 318 F. Supp. 3d 270, 276 (D.D.C. 2018) (second alteration in original) (citation and internal quotation marks omitted); *see also Wolfram Alpha LLC v. Cuccinelli*, 490 F. Supp. 3d 324, 330 (D.D.C. 2020) ("Venue is proper in the Central District of California because that is where the challenged federal action—[the California Service Center's] denial of [plaintiff's] [p]etition—occurred[.]"); *Al-Ahmed v. Chertoff*, 564 F. Supp. 2d 16, 20 (D.D.C. 2008) ("The local interest in resolving local disputes at home applies to controversies involving federal decisions that impact the local environment, *and to controversies requiring judicial review of an administrative decision*." (citation and internal quotation marks omitted)); *Ike*, 2020 WL 7360214, at *3; *Bourdon v. U.S. Dep't of Homeland Sec.*, 235 F. Supp. 3d 298, 308 (D.D.C. 2017); *Chauhan v. Napolitano*, 746 F. Supp. 2d 99, 105 (D.D.C. 2010).

Second, the Central District of California would be the more convenient forum for this action, as the field office most familiar with the facts of their application is located there. This case's nexus to the District of Columbia, in contrast, is exceptionally weak. The only connection between the two is that some USCIS offices—none of which worked on Plaintiffs' application or petition—were located in the District of Columbia at the time Plaintiffs' complaint was filed. Dkt. 14-1 at 3 (Bowie Decl. ¶ 9); *see also supra* n.5. Accordingly, to the extent any relief is

granted in this case, it would apply to government officials not in the District of Columbia, but, instead, those in the Central District of California who would be responsible for adjudicating Plaintiffs' application and petition anew.  Convenience therefore favors transfer to the Central District of California as well.

Third, the Court must evaluate "the relative congestion of the courts."  *Aracely*, 319 F. Supp. 3d at 30.  "As neither party has made a showing that the current caseloads of either District would have a bearing on the disposition of this action, the Court finds this factor neutral." *Ngonga*, 318 F. Supp. 3d at 276 (citing *Nat'l Ass'n of Home Builders v. U.S. EPA*, 675 F. Supp. 2d 173, 178 (D.D.C. 2009)).  The Court notes, however, that while the number of "actions per judgeship" is roughly 43% higher in the Central District of California than it is the District of Columbia, the median time "from filing to disposition" is, in fact, 10% *less* in the Central District of California.  *See* U.S. District Court—Federal Court Management Statistics—Profiles, United States Courts (Dec. 31, 2020), https://www.uscourts.gov/sites/default/files/data_tables/fcms_na_distprofile1231.2020.pdf.  "Courts have held that when statistics regarding relative congestion are mixed," like here, "this factor should be deemed as neutral." *Wolfram Alpha LLC*, 490 F. Supp. 3d at 336.  Accordingly, the Court concludes that "the relative congestion of the courts," *Aracely*, 319 F. Supp. 3d at 30, favors neither party.

Finally, the federal judges in the Central District of California, like all federal judges, "are familiar with federal laws, including those at issue in immigration disputes."  *Bahena*, 2021 WL 1820232, at *4; *see also Aftab v. Gonzalez*, 597 F. Supp. 2d 76, 83 (D.D.C. 2009) ("The transferee district is presumed to be equally familiar with the federal laws governing [the plaintiff's] claims."); *Wolfram Alpha*, 490 F. Supp. 3d at 335; *Bourdon*, 235 F. Supp. 3d at 309;

11

*W. Watersheds Project v. Pool*, 942 F. Supp. 2d 93, 101 (D.D.C. 2013). The relative competency of each jurisdiction is, accordingly, a neutral factor with respect to transfer.

In sum, the public and private interests largely tip in favor of transfer, except for two factors, the congestion and competencies of the relevant courts, which are neutral. The Court will, therefore, order this case transferred to the United States District Court for the Central District of California. In light of this decision, the Court will not consider USCIS's motion to dismiss, Dkt. 8, or Plaintiffs' motion for preliminary injunction, Dkt. 2. *See Mohammadi v. Scharfen*, 609 F. Supp. 2d 14, 16 n.2 (D.D.C. 2009); *Glob. Payments*, 38 F. Supp. 3d at 51.[6]

A separate order will issue.

/s/ Randolph D. Moss
RANDOLPH D. MOSS
United States District Judge

Date: May 24, 2021

---

[6] Although USCIS's motion to dismiss challenges the Court's subject-matter jurisdiction, "a federal court has leeway 'to choose among threshold grounds for denying audience to a case on the merits.'" *Sinochem Int'l Co. v. Malaysia Int'l Shipping Corp.*, 549 U.S. 422, 431 (2007) (quoting *Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 585 (1999)). To be sure, "the Supreme Court . . . has [not] decided whether a court may transfer a case without first satisfying itself of its Article III and subject matter jurisdiction." *Producers of Renewables United for Integrity Truth & Transparency v. EPA*, 778 Fed. App'x 1, 4 (D.C. Cir. 2019) (per curiam). The only D.C. Circuit decision to address the issue in detail, meanwhile, did so in an unpublished and nonprecedential opinion. *Id.*; *see also* D.C. Cir. R. 36(d). In that case, the D.C. Circuit explained that "'[j]urisdiction is vital only if the court proposes to issue a judgment on the merits,'" and then expressed "confiden[ce] that [its] order transferring [part of the case] d[id] not assume the 'law-declaring power' that would require [the court] to first assert jurisdiction." *Producers of Renewables*, 778 Fed. App'x at 4 (first alteration in original) (first quoting *Sinochem*, 549 U.S. at 431, and then quoting *Ruhrgas*, 526 U.S. at 585); *accord Klayman v. Kollar-Kotelly*, No. 12-5340, 2013 WL 2395909, at *1 (D.C. Cir. May 20, 2013) (characterizing (in dicta) venue as a "threshold ground[]" under *Sinochem*). Courts in this district have consistently held that questions of venue may be addressed before those of subject-matter jurisdiction. *See, e.g.*, *Pac. Mar. Ass'n v. NLRB*, 905 F. Supp. 2d 55, 58–59 (D.D.C. 2012) (collecting cases). Mindful of the D.C. Circuit's guidance on the issue to date, and because the choice of venue has no bearing on the merits of the parties' underlying dispute, the Court concludes that transfer is appropriate here despite USCIS's pending motion to dismiss for want of subject-matter jurisdiction.